Filed 10/19/22  P. v. Washington CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>DENNIS WASHINGTON, JR.,<br><br>Defendant and Appellant. | F081982<br><br>(Kern Super. Ct. No. BF165786A)<br><br>**OPINION** |

## THE COURT*

APPEAL from a judgment of the Superior Court of Kern County.  John D. Oglesby, Judge.

Athena Shudde, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Lewis A. Martinez, and Louis M. Vasquez, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

* Before Hill, P. J., Poochigian, J. and Peña, J.

# BACKGROUND[1]

In an amended information filed January 27, 2017, the Kern County District Attorney charged defendant Dennis Washington, Jr. with attempted first degree murder of Janette D. (Pen. Code, §§ 664, 187, subd. (a);[2] 189, subd. (a); count 1), attempted first degree murder of James D. (§§ 664, 187, subd. (a); 189; count 2), shooting at an inhabited dwelling (§ 246; count 3), assault with a firearm on Janette D. (§ 245, subd. (b); count 4), assault with a firearm on James D. (§ 245, subd. (b); count 5), and possession of a firearm as a felon (§ 29800, subd. (a)(1); count 6). The information also alleged that all six counts were committed for the benefit, at the direction of, or in association with a criminal street gang (§ 186.22, subd. (b)); during the commission of counts 1 through 3, defendant intentionally and personally discharged a firearm (§ 12022.53, subd. (c)); in the commission of counts 4 through 6, defendant personally used a firearm (§ 12022.5, subd. (a)) and personally inflicted great bodily injury (§ 12022.7, subd. (a).)[3]

Defendant's first trial ended in mistrial. After defendant's second trial, a jury convicted him on counts 4 and 6. The jury found the firearm (§ 12022.5, subd. (a)) and great bodily injury enhancements (§ 12022.7, subd. (a)) to count 4 true. The jury acquitted defendant on counts 1 and 3, as well as attempted voluntary manslaughter as a lesser included offense of count 1. The jury found the gang enhancement allegation (§ 186.22, subd. (b)) not true as to counts 4 and 6.

The jury failed to reach a verdict on counts 2 and 5. The jury also failed to reach a verdict on discharge of a firearm "in a grossly negligent manner" (§ 246.3) as a lesser included offense of count 3, and a mistrial was declared as to those counts.[4]

---

[1] Much of the factual and procedural background recounted here is drawn from our nonpublished opinion in *People v. Washington* (May 12, 2020, F076340).

[2] Subsequent statutory references are to this Code unless otherwise noted.

[3] These two enhancements were later dropped as to count 6.

[4] These counts were later dismissed at the People's request, in the "interest of justice."

The court sentenced defendant to the upper term of nine years on count 4, plus 10 years for the gun enhancement (§ 12022.5), plus three years for the great bodily injury enhancement (§ 12022.7). On count 6, the court sentenced defendant to a stayed (§ 654) term of three years.

In *People v. Washington*, *supra*, F076340, we affirmed the judgment, but remanded for the trial court to exercise its discretion under Senate Bill No. 620 (2017– 2018 Reg. Sess.) (Senate Bill 620).

The court declined to exercise its discretion under Senate Bill 620 to strike the firearm enhancement.

Defendant's appellate counsel initially filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436. Defendant eventually filed another brief arguing that newly effective Senate Bill No. 567 (2021–2022 Reg. Sess.) (Senate Bill 567) requires another remand for resentencing, and that Senate Bill No. 81 (2021–2022 Reg. Sess.) (Senate Bill 81) should be applied on remand. The Attorney General concedes remand is required, and we accept the concession.

## FACTS

Robert Tyo worked as a patrol officer for the Bakersfield Police Department on August 8, 2016. Shortly after 9:00 p.m., Officer Tyo was called out to a shooting at an apartment complex on West Columbus Street in Bakersfield. When Tyo arrived on scene, people were shouting and directing his attention to a particular upstairs apartment. Janette D. was standing inside the apartment near the front door. She appeared to have a gunshot wound to her right buttocks. She was scared, crying and in pain. Janette told Tyo she had been shot by defendant.

Police found a shell casing in the courtyard. Blood was found by a cement wall towards the inside of the courtyard.

3.

**Janette's Trial Testimony**

Janette was sitting on a brick wall at her apartment complex. James D. was standing with Janette. Defendant came down a nearby flight of stairs. James was "shock[ed]" to see defendant. James made a motion with hands as if to say, " '[W]hat's up?' " Defendant did not say anything and just walked away. James was yelling and "talking shit" to defendant in a disrespectful manner. James eventually began to shout gang slurs at defendant. James then said, " 'Westside' " to "rep" his gang. James also called defendant a "bitch" and said, " 'Westside stupid motherf[**]ker.' "

At one point, James pulled up his pants. Then he "faked like he was picking up something and putting it into his pants."[5] In reality, James had not picked up anything. Defendant came towards James with something in his hand, prompting James to duck.

Janette testified at trial that her "back was turned when the shot was fired," so she did not know who fired it. Janette admitted she recalled telling officers that defendant had shot her. However, Janette claimed she had been "getting beat on" by James, and that James had told her to say defendant was the shooter.

When asked if defendant identifies as an Eastside Crip, Janette testified, "Well, I don't know for sure. I just know that's the side of town that I know him from."

No more than one hour prior to this incident, defendant and James had gotten into a fistfight. The fistfight occurred near the bottom of the stairs to Janette's apartment. The two men were attempting to punch one another with closed fists. Defendant put James into a headlock, at which point Janette broke up the fight. Neither man pulled out a weapon during the fight.

---

[5] Janette admitted she had not mentioned James making the motion of "picking up air" until she had to testify in front of defendant. She never told one of the responding officers, Seann Woessner, that James had pretended to have a gun.

4.

## Subsequent Events

Sometime after the shooting, Janette was walking with her five-year-old son when someone approached her. Janette had never seen the person before. The person asked Janette, " 'So what are you going to do?' " Janette understood the person to be asking whether she was going to testify about the shooting. Janette testified that she did not know how she responded to the woman or whether she felt scared.

Later, two men in a vehicle approached Janette while she was walking. The men said, " 'What are you going to do?' " Janette understood them to be asking whether she was going to testify about the shooting. Janette became scared and took off running.

Later still, Janette received a phone call from someone with a male voice. Janette recalled previously testifying that the person said, " 'If you testify, you become a snitch. You snitch, you know what happens?' " They also said, " 'You have a baby; right?' " The call worried Janette because she considered it a threat towards her son.

When Janette learned of a subpoena to compel her testimony, she left the state. She did not appear in court. Janette claimed she left the state for a family event.

A second subpoena was handed directly to Janette. Janette told the person who served the subpoena that she would not comply. Indeed, Janette failed to appear in court a second time. Janette was arrested for failing to appear in court.

She had previously testified that her failure to appear was because she was scared. However, at trial, Janette claimed she was not scared.

## Officer Seann Woessner's Testimony

Officer Seann Woessner responded to the scene and observed Janette was crying and in pain. Woessner asked Janette what happened. She said "Dennis Washington" had shot her. Janette said she did not know why defendant had shot her. Janette said that defendant is an Eastside Crip, and that James is a member of the Westside Crips gang.

**Officer Dean Barthelmes's Testimony**

Officer Dean Barthelmes interviewed Janette at Kern Medical Center. Janette told Barthelmes that defendant shot her "as he was trying to shoot James" during an argument.

**Recovery of the Gun**

Defendant was apprehended on September 29, 2016. Eventually, he was placed in holding cell number 2 at the Bakersfield Police Department. On November 7, 2016, a gun was found hidden in a chair in the holding cell. Between September 26, 2016, and November 7, 2016, defendant and eight other people had been in the holding cell. Forensic test-fire analysis indicated the recovered gun was the same one used to shoot Janette. DNA recovered from the gun was a highly likely match to defendant's DNA.

## DISCUSSION

Defendant contends this matter must again be remanded for resentencing pursuant to Senate Bill 567.[6] The Attorney General concedes that remand is required.

**Additional Background**

When the court sentenced defendant, it started with the presumption the midterm applies and "then look[ed] at the mitigation and aggravation." The court discussed three aggravating factors: (1) defendant's numerous prior convictions as an adult and sustained petitions in juvenile delinquency proceedings; (2) defendant was on felony probation when the present offense was committed; and (3) defendant's prior performance on probation was unsatisfactory. The court observed that the probation report identified no factors in mitigation. The court ultimately concluded that the upper term was justified.

---

[6] Defendant also argues that on remand the trial court should strike the punishment for the great bodily injury enhancement pursuant to Senate Bill 81. We will not address this contention in the first instance. The Attorney General concedes defendant may raise the issue in the trial court on remand.

The court also made the following comment:

> "I will comment that in addition to that, I wouldn't say that the Court would never bite at mid term, but when I look at the totality of the circumstances that were presented at the time of trial, in addition to the factors cited by the circumstances in mitigation,[7] and just the number of other people that were present and the environment of which the shooting occurred, that certainly works against this Court for me to generate any leniency."

The court then imposed the upper terms on counts 4 and 6.

**Analysis**

Senate Bill 567, which became effective on January 1, 2022, modified section 1170, subdivision (b) to require imposition of the middle term of imprisonment unless circumstances in aggravation justify imposition of a greater sentence and are found true beyond a reasonable doubt or stipulated to by the defendant. (Stats. 2021, ch. 731, § 1.3.) As the People concede, the trial court relied on circumstances in aggravation that were neither found true beyond a reasonable doubt nor admitted by defendant. We therefore remand for another resentencing consistent with Senate Bill 567.

## DISPOSITION

The matter is remanded for the trial court to conduct a resentencing hearing consistent with section 1170, subdivision (b), as amended. If defendant raises an issue under Senate Bill 81, the trial court may consider it.

---

[7] The Attorney General suggests the court misspoke here because "there were no circumstances in mitigation."